2010 Ark. App. 814

**Sandra Forde BECKWORTH, Appellant**

v.

**DIAMANTE, a PRIVATE MEMBERSHIP GOLF CLUB, LLC, and Cooper Land Development, Inc., Appellees.**

**No. CA 10–126.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

James A. Armogida, Andrea Lea Davis, Andi Davis Law Firm, Hot Springs, for appellant.

Bryan Jay Reis, Philip B. Montgomery, The Farrar Firm, Hot Springs, for appellees.

ROBERT J. GLADWIN, Judge.

Appellant Sandra Forde Beckworth brings this appeal from the order of the Saline County Circuit Court granting summary judgment to appellees Diamante, A Private Membership Golf Club, LLC (Diamante or the club), and Cooper Land Development, Inc. (Cooper), on the basis that the statute of limitations barred her claim. Appellees cross-appeal from the circuit court's denial of their motion for attorney's fees. We affirm on direct appeal and on cross-appeal.

Diamante is a private golf course and club that was developed as part of a subdivision located in Hot Springs Village, Saline County, Arkansas. Cooper is successor in interest to the developer. The subdivision was subject to certain recorded covenants and restrictions relating to membership in the club known as the "Supplemental Declaration." Every owner of property in the subdivision is entitled to a full golf membership in the club, with the membership subject to the provisions of the Supplemental Declaration and the Articles, By–Laws, and rules and regulations of the club. The Articles, By–Laws, and rules and regulations provide that they may be amended by the club in its sole discretion. The property owner is required to pay the monthly dues associated with a full golf membership, and the amount of the dues is determined solely by the club. The Supplemental Declaration also provides that the monthly dues shall commence as to each lot on a date fixed by the club. The club is entitled to a lien on the property for unpaid monthly dues. Upon any sale of the property after the initial sale from the developer, the club is entitled to collect a transfer fee, the amount of which is in the sole discretion of the club.

Appellant and her now-deceased husband purchased their lot in the subdivision in July 1995. They executed an "Addendum to the Contract for Sale of Real Estate" that discusses membership in the club. They were required to pay an "Initiation Deposit" of $10,000, which was included in the purchase price of their property and was to be refundable after thirty years. The monthly dues were $225 at that time, and the transfer fee was $5,000. Appellant and her husband also executed a "Notice to Purchasers" that, among other things, stated that the developer had no program to assist in the sale of lots unless they were lakefront or golf-front lots and that the developer was not obligated to buy the lot back, rent it, or assist in selling the lot. Moreover, the sales representative was stated to be independent and not an employee of the developer and had no authority to bind the developer to anything not set forth in the contract documents. Appellant also signed a receipt in which her right to rescind the transaction was acknowledged and a certification by the agent that no representations were made contrary to those contained in the property report.

On October 8, 2008, appellant wrote a letter to the club in which she explained that her husband had died in 2004 and asked that she be relieved from paying the monthly dues and, if she sold her property, the transfer fee. The letter also asserted that there had been representations made at the time of appellant's purchase that the club would remain a "private club" exclusively for homeowners in the subdivision and that the club had changed the rules solely for the benefit of the club and the developer. Appellant contended that this resulted in a breach of the covenants and restrictions.

On October 30, 2008, appellant filed her complaint, alleging that, prior to the purchase of her property, she and her husband received assurances that, in the event of her husband's death, the obligation to

pay dues would be assigned to another party and appellant would not be saddled with that obligation. She further alleged that without this assurance, she would not have purchased the property. The complaint alleged that both Cooper and the club were in breach of the Supplemental Declaration in that they had sold over ninety lots without collecting the monthly dues from those owners.[1] Appellant asserted that the appellees should not be able to enforce the provisions for payment of the monthly dues and the transfer fee against her. She also sought damages and her attorney's fees and costs.

On December 22, 2008, appellant filed her First Amended Complaint. The allegations in the amended complaint were similar to those set forth in the original complaint. Appellant also alleged that she had only recently received a copy of the Supplemental Declaration and had attempted unsuccessfully to resign her golf membership.[2]

Appellees filed separate answers to appellant's complaint, denying the material allegations. The answers asserted various affirmative defenses such as waiver, estoppel, laches, and the statute of limitations, and that the complaint failed to state facts upon which relief could be granted. The answers also sought attorney's fees and costs pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999).

On July 9, 2009, appellees filed their joint motion for summary judgment as to appellant's first amended complaint. They asserted that they were entitled to summary judgment because appellant's claim was barred by the statute of limitations. Appellant responded with a motion to strike or, alternatively, require appellees to clarify the facts each appellee relied upon in moving for summary judgment because, according to appellant, the claims against each appellee were different. Appellant also responded to the merits of the motion by asserting that the sale of the deferred lots was a continuing breach so that the statute of limitations did not begin to run until the practice terminated in 2004.

On July 20, 2009, appellant filed her Second Amended Complaint, a Motion for Class Certification, and a memorandum in support of the motion. The Second Amended Complaint sought to have the case certified as a class action suit. The allegations of the Second Amended Complaint contained the same allegations and causes of action as the earlier complaints with the exception that appellant was no longer asserting the misrepresentation claim. The Second Amended Complaint sought a declaratory judgment that the provisions relating to the monthly dues, transfer fees, and assignments of the memberships contained in the Supplemental Declaration were unenforceable and void and that Cooper had breached the Supplemental Declaration and caused the value of appellant's property to be diminished.

Following a hearing on appellees' motion for summary judgment at which appellant objected on the basis that the operative complaint was her Second Amended Complaint containing class allegations, the circuit court issued a letter opinion on September 3, 2009, granting appellees' motion. The court first noted that, although it had doubts, it assumed that the Supplemental Declaration constituted a contract. The

1. The parties referred to these sales where the purchaser is not immediately required to pay the monthly dues as "deferred lot" sales.

2. On February 6, 2009, appellant filed a motion seeking a preliminary injunction against the club. Following a hearing, the circuit court entered an order denying appellant's request on March 30, 2009.

court found that the statute of limitations on appellant's unconscionability claim began to run at the time of appellant's purchase of the property in 1995 because the Supplemental Declaration was unconscionable, if at all, at the time of appellant's purchase. The court further found that appellant's claim for misrepresentation of the club-dues addendum sounded in fraud and was barred by the statute of limitations. Turning to appellant's breach-of-contract claim based on the sale of the deferred lots, the court found that the five-year statute of limitations began to run with the sale of the first deferred lot. The court concluded that appellant's claim was barred because she filed her complaint more than five years after the first sale of a deferred lot. The court's order memorializing its ruling on the motion was entered on September 23, 2009. This appeal followed.

We recently set forth the following standard of review with regard to motions for summary judgment:

Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Culhane v. Oxford Ridge, LLC,* 2009 Ark. App. 734, at 3–4, 362 S.W.3d 325, 327 (quoting *Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.,* 365 Ark. 573, 231 S.W.3d 720 (2006)).

In this appeal, appellant challenges the circuit court's grant of summary judgment to appellees and argues eight points for reversal: (1) Did the circuit court abuse its discretion by ruling on summary judgment based on appellant's First Amended Complaint when she had filed a Second Amended Complaint prior to the hearing; (2) Did the circuit court err in holding a hearing on the motion for summary judgment after appellant had filed her Second Amended Complaint and was seeking certification of the case as a class action; (3) Was it proper for the circuit court to proceed to a hearing on the motion for summary judgment where neither defendant was required to plead facts or allegations they believed entitled them to summary judgment; (4) Did the circuit court misapply the applicable limitations law as to appellant's claims against appellee Cooper, and did appellant file her original complaint within the limitations period; (5) Did the circuit court err in granting summary judgment to appellee Cooper when Cooper failed to offer any proof justifying summary judgment; (6) Did the circuit court misapply the applicable limitations law as

to appellant's claims against appellee Diamante, and did appellant file her original complaint within the limitations period; (7) Did the circuit court err in granting summary judgment to appellee Diamante when Diamante failed to offer any proof justifying summary judgment; and (8) Did the circuit court err in the form of the order entered in granting summary judgment to appellees.

◾ We discuss the first and second points together. In those points, appellant argues that the circuit court erred in considering appellees' motion for summary judgment because she had amended her complaint to include class allegations. While appellant is correct in stating that an amended complaint, unless it adopts and incorporates the original complaint, supersedes the original complaint, *Farmers Union Mut. Ins. Co., Inc. v. Robertson,* 2010 Ark. 241, 370 S.W.3d 179, *James v. Williams,* 372 Ark. 82, 270 S.W.3d 855 (2008), the rule in those cases does not apply to this case because in each of appellant's three complaints the claims are the same except for the misrepresentation claim, which was omitted from the Second Amended Complaint. All three complaints sought to recover for breach of contract or to declare that the covenants were unconscionable. This also serves to distinguish the present case from *Mullen v. Shockley,* 2009 Ark. App. 855, 2009 WL 4851953, where a new claim was asserted after the court heard a motion for summary judgment.

◾ Citing *Carquest of Hot Springs, Inc. v. General Parts, Inc.,* 367 Ark. 218, 238 S.W.3d 916 (2006); and *BNL Equity Corp. v. Pearson,* 340 Ark. 351, 10 S.W.3d 838 (2000), appellant further argues that the circuit court erred in granting summary judgment because a circuit court cannot delve into the merits of the underlying claim at a hearing on class certification. Again, that rule has no application

because the court was not conducting a hearing on class certification; instead, it was hearing appellees' motion for summary judgment. Appellant did not ask for a continuance so that her class-certification motion could be heard prior to the motion for summary judgment being heard. It was appellant's burden as the moving party seeking class certification to obtain a ruling on her motion. *Cross v. Arkansas Livestock & Poultry Comm'n,* 328 Ark. 255, 943 S.W.2d 230 (1997). Moreover, our supreme court has specifically held that a circuit court *can* consider motions for summary judgment or motions to dismiss under Rule 12(b)(6) prior to the consideration of the appropriateness of class litigation. *National Enters., Inc. v. Kessler,* 363 Ark. 167, 213 S.W.3d 597 (2005)(motion for summary judgment); *Speights v. Stewart Title Guar. Co.,* 358 Ark. 59, 65–A, 186 S.W.3d 715, 719 (2004) (supplemental opinion on denial of rehearing) (Rule 12(b)(6) motion to dismiss). Therefore, the circuit court did not err in considering appellees' motion for summary judgment prior to ruling on the motion for class certification.

◾ We cannot consider appellant's third point arguing that the court erred in not granting her motion to strike the motion for summary judgment or, alternatively, requiring appellees to replead the matter by setting forth the facts relied upon because the record does not show that she presented the motion to the circuit court for a ruling. *Cross, supra.*

Appellant's fourth point is that the circuit court erred in granting summary judgment based on the statute of limitations to appellee Cooper because the breach of the restrictive covenants was a continuing one, occurring each time a deferred lot was sold. She also argues that the statute of limitations was tolled by fraudulent concealment.

Appellant agrees that the applicable statute of limitations is five years, both under Arkansas Code Annotated section 16–56–111 (Repl.2005)[3] and section 16–56–115 (Repl.2005).[4] Appellant contends that the sale of over ninety deferred lots by Cooper amounted to a continuing breach of the Supplemental Declaration so that the statute of limitations began to run anew with each such sale, or, alternatively, when the deferred-sales program was terminated in 2004. We disagree. The true test in determining when a cause of action for breach of contract arises or accrues is to establish the time when the plaintiff could have first maintained the action to successful conclusion. *Elder v. Security Bank of Harrison,* 68 Ark.App. 132, 5 S.W.3d 78 (1999). The cause of action accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Id.* Here, that occurred when Cooper made the first sale of a deferred lot. As discussed below in the next section, appellees presented proof as to at least one sale of a deferred lot occurring in August 2003, more than five years prior to appellant's suit being filed in October 2008. Appellant is basing her claim against Cooper on the sale of the deferred lots. The claim accrued and the statute of limitations began to run when the lots were first sold.

In order to toll the statute of limitations on the ground of fraudulent concealment, plaintiffs must show something more than a continuation of a prior nondisclosure; rather, there must be evidence creating a factual question related to some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. *Meadors v. Still,* 344 Ark. 307, 40 S.W.3d 294 (2001). However, appellant simply offered no evidence that would indicate that appellees engaged in some "positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." She does not even discuss what acts by appellees amounted to the fraud concealing her cause of action.

We discuss appellant's fifth and seventh points together. Those points assert that the circuit court erred in granting summary judgment to appellees because they failed to offer proof as to the applicability of the statute of limitations.

When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Pledger v. Carrick,* 362 Ark. 182, 208 S.W.3d 100 (2005). However, once it is clear from the face of the complaint that the action is barred by the applicable statute of limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.*

In the present case, appellees attached a copy of a dues addendum, which was part of the contract for sale where third parties purchased a lot in the subdivision in August 2003. The obligation to pay the monthly membership dues for a full golf membership was deferred for a period of

---

3. Section 16–56–111(a) provides in pertinent part that "[a]ctions to enforce written obligations, duties, or rights, except those to which § 4–4–111 is applicable, shall be commenced within five (5) years after the cause of action shall accrue."

4. Section 16–56–115 provides that "[a]ll actions not included in §§ 16–56–104, 16–56–105, 16–56–108, and 16–56–109 shall be commenced within five (5) years after the cause of action has accrued."

ten years, until September 2013, or until the third parties began using the club facilities. This helps establish that the sales were occurring more than five years prior to appellant's filing suit. Once appellees produced evidence showing that the statute of limitations began to run more than five years prior to appellant's suit being filed, it was incumbent on appellant to present proof showing that the statute was tolled. *Pledger, supra.* Appellant failed to do so. Summary judgment is proper when the statute of limitations bars the action. *Elder, supra.*

▇ Appellant's sixth point relates to her claims against the club. She asserts that these claims do not depend upon the sale of the deferred lots and, instead, are based upon the club's refusal to allow appellant to resign her full golf membership in October 2008, just prior to suit being filed. Because her cause of action against the club arose during the same month in which she first filed suit, appellant contends that the statute of limitations could not have run on her claims against the club.

The facts asserted as the basis of appellant's claim against the club in the First Amended Complaint were the club's failure to collect golf-membership dues from the purchasers of the deferred lots and by allowing Cooper to make the deferred sales. Appellant's Second Amended Complaint makes the same allegations concerning the club breaching the Supplemental Declaration by failing to collect the membership dues in several different paragraphs. Thus, the essence of appellant's complaint for declaratory relief is still the sale of the deferred lots. Appellant alleged that the Supplemental Declaration's monthly golf-membership dues requirement was unenforceable because the club allegedly breached its obligations by not collecting the dues from the purchasers of the deferred lots. Therefore, the same

five-year-limitations period controls and began to run when the first deferred lot was sold and the dues were not collected.

▇ Appellant's eighth and final point is that the form of the order entered by the circuit court appears to be a determination of the merits of appellant's claim and not based solely on the running of the statute of limitations. The circuit court's attaching a copy of its letter opinion to the order granting summary judgment and incorporating it by reference cured any problem with the form of the order because the letter opinion became a part of the court's judgment. *See Thomas v. McElroy,* 243 Ark. 465, 420 S.W.2d 530 (1967); *Moses v. Dautartas,* 53 Ark.App. 242, 922 S.W.2d 345 (1996). This is because a judgment will be tested by its substance, not its form. *Thomas, supra.*

▇ For their sole point on cross-appeal, appellees argue that the circuit court erred in failing to award them their attorney's fees. Their argument is that the fee requested was reasonable, the amount of money in controversy was considerable, and that the other factors to be considered in determining a reasonable fee weighed in their favor. In response, appellant argues that the circuit court correctly exercised its discretion not to award an attorney's fee and that appellees were not the "prevailing party."

▇ Arkansas Code Annotated section 16–22–308 controls the award of attorney's fees in contract cases and provides in pertinent part:

In any civil action to recover on ... breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

The statute gives the circuit court the discretion to award reasonable attorney's fees only to the "prevailing party." *Perry v. Baptist Health,* 368 Ark. 114, 243 S.W.3d 310 (2006). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Id.* Prior to awarding attorney's fees, the circuit court is required to make a determination of which party, if any, prevailed on the merits of the case as a whole, and need not make such a determination for particular issues within the case. *Id.* A successful defendant in a contract action may be considered a "prevailing party" for the purposes of section 16–22–308. *Id.* However, the circuit court stated that it denied the motion after considering "all relevant factors" and specifically declined to rule on whether a party prevailing on a statute-of-limitations defense could be considered as prevailing on the merits for the purposes of section 16–22–308.

Prevailing on a motion for summary judgment based on a statute-of-limitations defense is a decision on the merits in certain contexts because res judicata would bar a subsequent attempt to relitigate the same issues. *Parker v. Perry,* 355 Ark. 97, 131 S.W.3d 338 (2003). However, the policy of statutes of limitations is to settle claims within a reasonable period of time after they arise and while the evidence is fresh in the witnesses' minds, *Dunlap v. McCarty,* 284 Ark. 5, 678 S.W.2d 361 (1984), and such limitations apply with full force to even the most meritorious claims. *Abbott v. Johnston,* 130 Ark. 1, 195 S.W. 676 (1917). As such, a decision awarding appellees summary judgment based on the statute of limitations would not involve a determination of the merits of appellant's claim. *Ray & Sons Masonry Contractors, Inc. v. U.S.*

*Fidelity & Guar. Co.,* 353 Ark. 201, 114 S.W.3d 189 (2003).

Even if we could say that prevailing on the basis of a statute of limitations was an adjudication on the merits, appellees have not shown that the circuit court abused its discretion in not awarding them a fee.

Affirmed on direct appeal; affirmed on cross-appeal.

VAUGHT, C.J., and HENRY, J., agree.